**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | |
|---|---|
| **KRISTINE BUNCH,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| vs. ) | **Cause No. 1:14-cv-438-WTL-DKL** |
| ) | |
| **BRYAN FRANK, et al.,** ) | |
| ) | |
| **Defendants.** ) | |

**ENTRY ON UNITED STATES OF AMERICA'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT**

This cause is before the Court on the United States of America's Motion to Dismiss or, in the alternative, Motion for Summary Judgment (Dkt. No. 13 in Cause No. 1:15-cv-160-RLY-TAB (S.D. Ind. Filed Feb. 5, 2015)).[1] The motion is fully briefed and the Court rules as follows.

### I. FACTUAL BACKGROUND

The facts as alleged in Bunch's Complaint (Dkt. No. 1 in Cause No. 1:15-cv-160-RLY-TAB) are as follow.

Bunch's Greensburg, Indiana mobile home caught fire in the early morning hours of June 30, 1995, killing her three-year-old son, Anthony. An investigation into the cause of the fire soon ensued. Indiana Fire Marshal investigators Bryan Frank and James Skaggs gathered evidence from Ms. Bunch's home and quickly concluded that "the fire was deliberately set, that accelerants had been used to cause the fire, that there were 'pour patterns' in the burned out home where accelerants had been poured, and that the fire had started in two separate locations, one of which was the bedroom in which Anthony was sleeping." Compl. ¶ 8.

---

[1] Cause No. 1:15-cv-160-RLY-TAB was consolidated with the present cause on June 23, 2015. *See* Dkt. No. 58.

In support of their theory, Frank and Skaggs sent the evidence to the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") to be tested.  William Kinard, a forensic chemist with the ATF, was assigned to the case.  Kinard concluded that several samples, including those from Anthony's bedroom (Exhibit 8) and the living room (Exhibit 6), had no traces of Heavy Petroleum Distillates ("HPDs") or any other accelerants.  He documented these findings in his initial report and communicated them to Skaggs and Frank.

Because Kinard's findings were inconsistent with Skaggs and Franks' theory of the case, they "caused Kinard's report to be altered so that it falsely stated that accelerants were found in exhibits 6 and 8," Compl. ¶ 24, and "Kinard agreed to alter his report to state that accelerants were found in exhibits 6 and 8, and concocted an 'official' report which falsely so stated." *Id*. ¶ 25.  Kinard also agreed not to include his finding that the areas that tested positive for HPDs were only "consistent with the presence of kerosene, for which there was an innocent explanation"; rather his official report would state that "they were consistent with a much broader array of HPDs[.]" *Id*. ¶ 26.  Skaggs, Frank, and Kinard submitted only the "official" report to the Decatur County State's Attorney in July 1995.

In 1996, Bunch was convicted of murder and sentenced to sixty years in prison.  In 2006, Bunch filed a post conviction petition challenging her conviction.  During the post conviction proceedings,

> it was first revealed that Kinard had prepared at least two reports that found no HPDs in exhibits 6 and 8—the crucial evidence from the bedroom and the "pour pattern" in the living room—and that Kinard had also determined that the HPDs found in other parts of the home were consistent only with kerosene, not other HPDs.
>
> It also was revealed for the first time in the course of these proceedings that Kinard had communicated his real findings to Skaggs and Frank, that these findings had been suppressed, and that subsequently his official report had been altered and fabricated to inculpate [Bunch].

2

*Id*. ¶¶ 38-39.  The Indiana Court of Appeals reversed Bunch's conviction on March 21, 2012, finding that "the State's failure to turn over a report from the ATF testing of floor samples violates *Brady*[.]" *Id*. ¶ 41; *see also Bunch v. State*, 964 N.E.2d 274 (Ind. Ct. App. 2012). Transfer to the Indiana Supreme Court was denied, and on December 17, 2012, all charges against Bunch were dropped.  In all, Bunch spent seventeen years in jail.

After filing her notice of claim, Bunch filed this suit against Kinard on February 5, 2015. She brings two counts under the Federal Tort Claims Act ("FTCA"):  1) a claim for malicious prosecution; and 2) a claim for intentional infliction of emotional distress ("IIED").[2]

## II.   APPLICABLE STANDARD

The United States has moved to dismiss Bunch's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1), for lack of subject matter jurisdiction, and 12(b)(6), for failure to state a claim.  While the United States takes the position that "the Court lacks subject matter jurisdiction over a case in which Congress has not waived sovereign immunity," it also recognizes that the Seventh Circuit has rejected this position. *See, e.g.*, *United States v. Cnty. of Cook, Ill.*, 167 F.3d 381, 389 (7th Cir. 1999) ("[W]hat sovereign immunity means is that relief against the United States depends on a statute; the question is not the competence of the court to render a binding judgment, but the propriety of interpreting a given statute to allow particular relief.").  Thus, the Court will consider the motion as one to dismiss for failure to state a claim, pursuant to Rule 12(b)(6).

In reviewing a Rule 12(b)(6) motion, the Court "must accept all well pled facts as true and draw all permissible inferences in favor of the plaintiff." *Agnew v. National Collegiate*

---

[2] Bunch also filed a complaint against Skaggs and Frank alleging a due process violation, malicious prosecution, and conspiracy to deprive her of her conditional rights. *See* Dkt. No. 1.

3

*Athletic Ass'n*, 683 F.3d 328, 334 (7th Cir. 2012). For a claim to survive a motion to dismiss for failure to state a claim, it must provide the defendant with "fair notice of what the . . . claim is and the grounds upon which it rests." *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009) (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007)) (omission in original). A complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Agnew*, 683 F.3d at 334 (citations omitted). A complaint's factual allegations are plausible if they "raise the right to relief above the speculative level." *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 556 (2007).

### III. DISCUSSION

The United States moves to dismiss Bunch's claims, arguing that "they are barred by the intentional torts exception to the FTCA, 28 U.S.C. § 2680(h)." Def.'s Br. at 5.

> The FTCA was designed primarily to remove the sovereign immunity of the United States from suits in tort. The Act gives federal district courts exclusive jurisdiction over claims against the United States for "injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission" of a federal employee "acting within the scope of his office or employment." 28 U.S.C. § 1346(b)(1). This broad waiver of sovereign immunity is subject to a number of exceptions set forth in § 2680. One such exception, relating to intentional torts, preserves the Government's immunity from suit for "[a]ny claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights." § 2680(h). We have referred to § 2680(h) as the "intentional tort exception."

*Millbrook v. United States*, 133 S. Ct. 1441, 1442 (2013) (internal citations and quotation marks omitted).

Bunch recognizes that "her allegations set forth intentional wrongdoing" but disagrees that the intentional tort exception applies, arguing that "the FTCA specifically waives sovereign immunity for intentional 'acts or omissions of investigative or law enforcement officers of the United States Government.'" Pl.'s Resp. at 6.

4

> In 1974, Congress carved out an exception to § 2680(h)'s preservation of the United States' sovereign immunity for intentional torts by adding a proviso covering claims that arise out of the wrongful conduct of law enforcement officers. Known as the "law enforcement proviso," this provision extends the waiver of sovereign immunity to claims for six intentional torts, including assault and battery, that are based on the "acts or omissions of investigative or law enforcement officers." § 2680(h). The proviso defines "investigative or law enforcement officer" to mean "any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law." *Id*.

*Id*. Thus, the United States' motion boils down to whether Kinard, a forensic chemist with the ATF, is an "investigative or law enforcement officer." The United States argues he is not; Bunch argues he is.

As explained above, an "investigative or law enforcement officer" is defined by statute as "any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law." 28 U.S.C. § 2680(h). Bunch alleges in her Complaint that "[a]s an ATF forensic chemist, Kinard was empowered by law to execute searches and to seize evidence." Compl. ¶ 14. Moreover, Bunch argues that Kinard "was tasked with executing a forensic search of items recovered from [Bunch's] mobile home, to determine whether that search would reveal chemicals that would assist in the criminal prosecution of [Bunch]. This clearly constituted a search." Pl.'s Resp. at 8.

> The United States argues that
>
> Bunch does not address the fact that Kinard was not authorized by law to make arrests or seize evidence on behalf of the ATF (see 18 U.S.C. § 3051 (granting these powers to ATF "Special Agents")), but argues that he was "executing a forensic search," which falls within the proviso. Plaintiff's argument thus ignores Kinard's status (or lack thereof) within the ATF, which is contrary to the statute and Supreme Court precedent.

Def.'s Reply at 8. Indeed, in *Millbrook*, the Supreme Court explained that the law enforcement proviso

> focuses on the *status* of persons whose conduct may be actionable, not the types of activities that may give rise to a tort claim against the United States. The proviso

5

thus distinguishes between the acts for which immunity is waived (*e.g.,* assault and battery), and the class of persons whose acts may give rise to an actionable FTCA claim. The plain text confirms that Congress intended immunity determinations to depend on a federal officer's legal authority, not on a particular exercise of that authority.

*Millbrook*, 133 S. Ct. at 1445. In this vein, the United States notes the following:

> Kinard was not empowered by statute or by the ATF to execute searches, to seize evidence, or to make arrests. 28 U.S.C. § 2680(h). As a chemist, his job involved analyzing forensic evidence in a laboratory in Maryland; he was not empowered to carry a firearm, serve warrants or subpoenas, make arrests or otherwise enforce federal law. *See* 18 U.S.C. § 3051 (granting these powers to ATF "Special Agents"); Def.'s Ex. 2 (Boykin Decl.). . . . His authority was limited to "assisting" Special Agents in their investigations. Def.'s Ex. 2.

Def.'s Reply at 9-10.

It appears to the Court, therefore, that the question is not whether Kinard was conducting a "search" at the time of the alleged wrongdoing,[3] but rather, whether he had the legal authority to do so. In claiming he did not, the United States relies on an affidavit from Lisa Boykin, Chief of the Human Resources Operation Division of the ATF. Boykin's affidavit asserts that at all times relevant to issues in this case, Kinard was employed as a "Chemist" with the ATF. Dkt. No. 13-2 ¶ 4. As such, his duties were as follow:

> serving as an ATF technical authority in the analysis of forensic evidence from the criminal investigation of gunshot residue, bombings and/or arsons; assisting Special Agents in major crime scene investigations involving gunshot residue and firearms incidents; serving as a subject area expert in one or more specialized areas such as the identification of explosive residue, fire debris, or trace evidence (i.e., fibers, hairs, soil, glass, etc.); and providing court testimony on the basis of laboratory examinations.

---

[3] The Court does not find persuasive Bunch's argument that—regardless of his legal authority to do so—Kinard was conducting a "search" in analyzing the evidence collected from her home. It appears to the Court that the trend has been to *narrowly* define what constitutes a "search" for purposes of determining whether a person falls into the law enforcement proviso. *See, e.g.*, *Pellegrino v. United v. U.S. Transp. Sec. Admin.*, Civil Action No. 09-5505, 2014 WL 1489939 (E.D. Pa. Apr. 16, 2014) (finding that while Transportation Security Officer "are authorized to 'execute searches' in the colloquial sense of the term" they nevertheless were "not encompassed in the law enforcement proviso of § 2680(h)").

*Id*. ¶ 5.  Boykin further asserts that

> the job duties and responsibilities of a Chemist do not include the duty to enforce any of the criminal, seizure, or forfeiture provisions of the laws of the United States, or the authority to carry firearms, serve warrants and subpoenas issued under the authority of the United States, make arrests, or make seizures of property subject to forfeiture of the United States.

*Id*. ¶ 6.

It appears clear to the Court that this issue cannot be resolved on the pleadings alone; rather, evidence is needed to determine the contours of Kinard's job with the ATF in order to determine whether the law enforcement proviso applies in this case.[4]  Accordingly, the motion to dismiss is **DENIED**, and the Court hereby gives notice to Bunch that it will be considering the United States' alternative motion for summary judgment. *See Santana v. Cook Cnty. Bd. of Review*, 679 F.3d 614, 619 (7th Cir. 2012) (noting that "consideration of outside matter without converting [a] motion [to dismiss] may result in reversible error").  As requested, the Court will allow Bunch time to conduct *limited discovery* into this issue and to properly respond.[5]

**Accordingly, the parties are ORDERED to confer with each other and file a notice with the Court within fourteen days outlining an agreed-upon timeframe to conduct the necessary discovery and a suggested briefing schedule.  If the parties cannot agree, they should request a conference with Magistrate Judge LaRue.  The consolidated case remains**

---

[4] The Court notes that the United States raises an additional argument regarding Bunch's IIED claim, that it is barred by the statute of limitations.  Bunch disputes this; however, the Court will reserve addressing this argument until the threshold issue is determined. *See* Pl.'s Resp. at 9 (conceding that "her IIED claim arises out of her claim for malicious prosecution against ATF chemist William Kinard").

[5] The Court agrees with the United States that discovery to "identify communications, interactions and contact with the Indiana State Fire Marshals," and "to determine precisely how Kinard's original exculpatory report was altered into the false report ultimately disclosed to the prosecutor" are not necessary to determine this preliminary issue. *See* Dkt. No. 19-1.

**STAYED pending a ruling on the United States' motion. As such, the Court expects the parties to work together in an expeditious manner.**

SO ORDERED: 6/29/15

_____
Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic notification