UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| KRISTINE BUNCH, ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| vs. ) | Cause No. 1:14-cv-438-WTL-DKL |
| ) | |
| BRYAN FRANK, et al., ) | |
| ) | |
| **Defendants.** ) | |

### ENTRY ON UNITED STATES' MOTION FOR SUMMARY JUDGMENT

This cause is before the Court on the United States' Motion for Summary Judgment (Dkt. No. 61). The motion is fully briefed and the Court, being duly advised, **GRANTS** the motion for the reasons set forth below.

### I.    FACTUAL BACKGROUND

Plaintiff Kristine Bunch alleges the following facts in her Complaint against the United States (Dkt. No. 1 in Cause No. 1:15-cv-160-RLY-TAB).[1] Because the issue before the Court is whether the United States is entitled to immunity for Bunch's claims, the Court assumes for purposes of this motion that these facts are true.

Bunch's Greensburg, Indiana mobile home caught fire in the early morning hours of June 30, 1995, killing her three-year-old son, Anthony. An investigation into the cause of the fire soon ensued. Indiana Fire Marshal investigators Bryan Frank and James Skaggs gathered evidence from Bunch's home and quickly concluded that "the fire was deliberately set, that accelerants had been used to cause the fire, that there were 'pour patterns' in the burned out

---

[1] Cause No. 1:15-cv-160-RLY-TAB was consolidated with the present cause on June 23, 2015. *See* Dkt. No. 58.

home where accelerants had been poured, and that the fire had started in two separate locations, one of which was the bedroom in which Anthony was sleeping." Compl. ¶ 8.

In support of their theory, Frank and Skaggs sent the evidence to the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") to be tested. William Kinard, a forensic chemist and gunshot residue analyst specialist ("GRA specialist") with the ATF, was assigned to the case. Kinard concluded that several samples, including those from Anthony's bedroom ("Exhibit 8") and the living room ("Exhibit 6"), had no traces of Heavy Petroleum Distillates ("HPDs") or any other accelerants. He documented these findings in his initial report and communicated them to Skaggs and Frank.

Because Kinard's findings were inconsistent with Skaggs and Franks' theory of the case, they "caused Kinard's report to be altered so that it falsely stated that accelerants were found in exhibits 6 and 8," Compl. ¶ 24, and "Kinard agreed to alter his report to state that accelerants were found in exhibits 6 and 8, and concocted an 'official' report which falsely so stated." *Id*. ¶ 25. Kinard also agreed not to include his finding that the areas that tested positive for HPDs were only "consistent with the presence of kerosene, for which there was an innocent explanation"; rather, his official report would state that "they were consistent with a much broader array of HPDs[.]" *Id*. ¶ 26. Skaggs, Frank, and Kinard submitted only the "official" report to the Decatur County State's Attorney in July 1995.

In 1996, Bunch was convicted of Anthony's murder and sentenced to sixty years in prison. In 2006, Bunch filed a post conviction petition challenging her conviction. During the post conviction proceedings,

> it was first revealed that Kinard had prepared at least two reports that found no HPDs in exhibits 6 and 8—the crucial evidence from the bedroom and the "pour pattern" in the living room—and that Kinard had also determined that the HPDs

> found in other parts of the home were consistent only with kerosene, not other HPDs.
>
> It also was revealed for the first time in the course of these proceedings that Kinard had communicated his real findings to Skaggs and Frank, that these findings had been suppressed, and that subsequently his official report had been altered and fabricated to inculpate [Bunch].

*Id*. ¶¶ 38-39.  The Indiana Court of Appeals reversed Bunch's conviction on March 21, 2012, finding that "the State's failure to turn over a report from the ATF testing of floor samples violates *Brady*[.]" *Id*. ¶ 41; *see also Bunch v. State*, 964 N.E.2d 274 (Ind. Ct. App. 2012). Transfer to the Indiana Supreme Court was denied, and on December 17, 2012, all charges against Bunch were dropped.  In all, Bunch spent seventeen years in prison.

## II. APPLICABLE STANDARD

Federal Rule of Civil Procedure 56(a) provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In ruling on a motion for summary judgment, the admissible evidence presented by the non-moving party must be believed, and all reasonable inferences must be drawn in the non-movant's favor. *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) ("We view the record in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor."). However, a party who bears the burden of proof on a particular issue may not rest on its pleadings, but must show what evidence it has that there is a genuine issue of material fact that requires trial. *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 901 (7th Cir. 2003). Finally, the non-moving party bears the burden of specifically identifying the relevant evidence of record, and "the court is not required to scour the record in search of evidence to defeat a motion for summary judgment." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001).

### III.  DISCUSSION

After filing her notice of claim, Bunch filed this suit against the United States on February 5, 2015. She brings two counts under the Federal Tort Claims Act ("FTCA"): 1) a claim for malicious prosecution; and 2) a claim for intentional infliction of emotional distress.[2]

The United States previously filed a Motion to Dismiss or, in the alternative, Motion for Summary Judgment. The Court denied that motion and allowed limited discovery (Dkt. No. 59), noting that evidence was "needed to determine the contours of Kinard's job with the ATF in order to determine whether the law enforcement proviso applies in this case." *Id.* at 7.

The United States moves for summary judgment, arguing that Bunch's claims are barred by the intentional torts exception to the FTCA.[3] The FTCA gives district courts exclusive jurisdiction over claims "for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). This waiver, however, is subject to many exceptions, including the intentional tort exception, which preserves the Government's immunity from suit for "[a]ny claim arising out of assault, battery, false imprisonment, false arrest,

---

[2] Bunch also has filed a complaint against Skaggs and Frank alleging a due process violation, malicious prosecution, and conspiracy to deprive her of her constitutional rights. *See* Dkt. No. 1.

[3] Initially, the United States also argued that Bunch's claim of intentional infliction of emotional distress was time barred; however, in light of Bunch's clarification that her claims against the United States are limited to a malicious prosecution claim arising out of her wrongful conviction and imprisonment, the United States has agreed that this claim is not barred by the statute of limitations. As such, the Court need not address the statute of limitations defense initially asserted by the United States.

malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights." 28 U.S.C. § 2680(h).  However, the intentional torts exception also states

> *Provided*, That, with regard to acts or omissions of investigative or law enforcement officers of the United States Government, the provisions of this chapter and section 1346(b) of this title shall apply to any claim arising, on or after the date of the enactment of this proviso, out of assault, battery, false imprisonment, false arrest, abuse of process, or malicious prosecution. For the purpose of this subsection, "investigative or law enforcement officer" means any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law.

*Id.*

As the Supreme Court has noted regarding the FTCA, "[a] word in a statute may or may not extend to the outer limits of its definitional possibilities. Interpretation of a word or phrase depends upon reading the whole statutory text, considering the purpose and context of the statute, and consulting any precedents or authorities that inform the analysis." *Dolan v. U.S. Postal Serv.*, 546 U.S. 481, 486 (2006). Further, when interpreting an exception to the FTCA, "the proper objective of a court . . . is to identify those circumstances which are within the words and reason of the exception – no less and no more." *Id.* at 492 (quotation and citation omitted). Moreover, the general rule that "a waiver of the Government's sovereign immunity will be strictly construed" does not apply in the FTCA context. *Id.* at 491-92 (quotation and citation omitted).

The issue before the Court is whether Kinard, a forensic chemist and GRA specialist with the ATF, is an "investigative or law enforcement officer." The United States argues he is not; Bunch argues he is. The burden is on the United States, which "must offer evidence that shows beyond reasonable dispute that its conduct was shielded by the exception." *Keller v. United States*, 771 F.3d 1021, 1023 (7th Cir. 2014) (addressing burden of proof regarding the discretionary function exception of the FTCA).

As explained above, an "investigative or law enforcement officer" is defined by statute as "any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests[4] for violations of Federal law." 28 U.S.C. § 2680(h). The law enforcement proviso

> focuses on the *status* of persons whose conduct may be actionable, not the types of activities that may give rise to a tort claim against the United States. The proviso thus distinguishes between the acts for which immunity is waived (*e.g.,* assault and battery), and the class of persons whose acts may give rise to an actionable FTCA claim. The plain text confirms that Congress intended immunity determinations to depend on a federal officer's legal authority, not on a particular exercise of that authority.

*Millbrook v. United States*, 133 S. Ct. 1441, 1445 (2013). As such, the Court must determine whether the United States has met its burden to show beyond reasonable dispute that Kinard was not empowered by law to execute searches or seize evidence.[5]

In claiming that Kinard was not empowered by law to execute searches or seize evidence, the United States relies on an affidavit from Lisa Boykin, Chief of the Human Resources Operation Division of the ATF. Boykin's affidavit asserts that at all times relevant to issues in this case, Kinard was employed as a "Chemist" with the ATF. Dkt. No. 61-3 ¶ 4. As such, his duties were as follows:

> serving as an ATF technical authority in the analysis of forensic evidence from the criminal investigation of gunshot residue, bombings and/or arsons; assisting Special Agents in major crime scene investigations involving gunshot residue and firearms incidents; serving as a subject area expert in one or more specialized areas such as the identification of explosive residue, fire debris, or trace evidence (i.e., fibers, hairs, soil, glass, etc.); and providing court testimony on the basis of laboratory examinations.

---

[4] Bunch does not argue that Kinard was empowered to make arrests, and the United States has pointed to undisputed evidence that chemists were not so empowered.

[5] Both 18 U.S.C. § 3051 and 28 U.S.C. § 599A, cited by the United States in its pleadings, were enacted in 2002 as part of the Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135 (2002). As such, they are immaterial to the legal authority afforded to a forensic chemist with the ATF in 1995-96.

*Id.* ¶ 5. Boykin further asserts that

> the job duties and responsibilities of a Chemist do not include the duty to enforce any of the criminal, seizure, or forfeiture provisions of the laws of the United States, or the authority to carry firearms, serve warrants and subpoenas issued under the authority of the United States, make arrests, or make seizures of property subject to forfeiture of the United States.

*Id.* ¶ 6.

Bunch deposed Julia Dolan, the Chief of the Forensic Laboratory of Washington, D.C., who was a co-worker of Kinard from 1993 until the time Kinard retired. Dkt. No. 61-4 at 4. She testified that a GRA specialist "frequently works at crime scenes," *id.*, and that a chemist "at the request of some investigator, would go to a scene, examine the scene, determine what might be of evidentiary value and then communicate that to the agent," *id.* at 5. It was part of Kinard's job to assist agents in searches for evidence.[6]

Chemists were not authorized to obtain a search warrant. Nor could they go to "private premises and serve the warrant and execute the warrant . . . [they] weren't the ones with the papers." *Id.* at 7. Rather, they "provided technical assistance to special agents." *Id.* They did not seize evidence from the scene – they would "provide advice or go to areas to potentially collect." *Id.* They did not have the authority to take a piece of evidence or an illegal item into custody. *Id.*

Even viewing the evidence in the light most favorable to Bunch, the Court finds that the actions ATF forensic chemists and GRA specialists were authorized to take do not constitute executing a search or seizing evidence so as to fall under the law enforcement exception. Being

---

[6] Dolan's description is consistent with the job descriptions for forensic chemists and GRA specialists. A forensic chemist "advises and assists special agents on site (usually major crime scenes) where special expertise will help the investigation." Dkt. No. 61-5 at 3. A GRA specialist "assists special agents in major crime scene investigation involving gunshot residue and firearms incidents and other related incidents where special expertise would help the on-scene investigation." Dkt. No. 63-4 at 3.

authorized to be present at a crime scene and assist ATF agents at that scene – even participating in the search by pointing out and possibly collecting evidence under the supervision of an agent – is not equivalent to having the authority to execute searches or seize evidence.

Nor is the Court persuaded by Bunch's argument that the laboratory work performed by chemists and GRAs constituted authority to search. To extend the definition of search to encompass such actions would stretch the law enforcement exception too far. Congress enacted the law enforcement exception in response to two highly publicized raids by federal agents on the homes of families in Collinsville, Illinois. The Eleventh Circuit summarized the facts of the raids as such:

> In the first of the Collinsville raids federal agents smashed in the door of the Giglotto family's home, brandished pistols, threw Mr. Giglotto down and handcuffed him, interrogated him at gunpoint, pointed a pistol at Mrs. Giglotto as she pleaded for her husband's life, and ransacked the house. Only later did the agents realize that they were at the wrong address and leave. In their wake, they left a smashed television, a broken camera, scattered books and clothes, scratched furniture, a shattered antique dragon, and two distraught people.
>
> Later that evening federal narcotics agents led twenty-five members of the same strike force to the home of the Askew family who lived nearby. An agent forced his way in as Mr. Askew tried to close the door. His wife fainted. The officers searched the home and interrogated Mr. Askew at gunpoint. After the officers realized that they were at the wrong house, they left.

*Nguyen v. United States*, 556 F.3d 1244, 1254-55 (11th Cir. 2009) (citations omitted). At the time, sovereign immunity barred the victims from recovering damages. In enacting the legislation that created the law enforcement exception, Congress focused on the categories of employees – law enforcement and investigative officers – who had the power to commit the types of abuses involved in the Collinsville raids. Further, work such as the type chemists perform in a laboratory does not comport with the ordinary meaning of the word "search."

Performing a chemical analysis of items previously seized by another is an action of a completely different nature than the actions of agents in the illegal raids. It would simply extend the definition of search too far to find that a chemist who is authorized to perform analyses in a laboratory is executing a search.

## IV.    CONCLUSION

Kinard was not an investigative or law enforcement officer under the law enforcement exception to the FTCA. As such, there has been no waiver of sovereign immunity to sue the United States for the reprehensible actions he is alleged to have taken in this case. Accordingly, the United States' motion for summary judgment is **GRANTED** as to Bunch's claims against the United States.

**SO ORDERED: 9/28/16**

_William T. Lawrence_

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic notification